IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BOBBY DWAYNE WILLIAMS                                                              PLAINTIFF

v.                              Civil No. 13-2004

SHERIFF RON BROWN                                                                  DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Ouachita River Correctional Unit of the Arkansas Department of Correction (ADC). The events at issue in this case occurred while Plaintiff was incarcerated in the Crawford County Detention Center (CCDC). Plaintiff maintains that his constitutional rights were violated in the following ways: (1) he was subjected to unconstitutional conditions of confinement; (2) he was denied trustee status because of his race; (3) he was denied trustee status in retaliation submitting grievances and/or filing civil rights cases; (4) he was denied visitation; and (5) he was denied medical attention for headaches.

Defendant has filed a motion for summary judgment (Doc. 45). Plaintiff has responded (Docs. 52 & 74). The motion is now ready for decision.

### 1. Background

With respect to his conditions of confinement claims, Plaintiff asserts that: there was black mold in the ventilation system at the jail and in the showers; on one occasion he was made to go out in 23 degree weather with no coat or socks; he was publically humiliated when he was

-1-

forced to walk out the front door of the jail and into the public; and he was housed with someone who had Tuberculosis (TB) .

Because of the mold, Plaintiff asserts that he experienced headaches, developed a cough, had yellow mucus and bleeding from the nose, a staph infection in his nose, and developed a knot in the center of his chest. *Plaintiff's Response* (Doc. 74) at ¶¶ 4-5 & 7. Plaintiff believes the substance in the air vents was black mold because he had trouble breathing when he was at the CCDC and had the problems described above. *Id.* at ¶ 5. No health care provider has told him that the staph infection resulted from exposure to black mold. *Id.* at ¶ 6.

The Sheriff indicates that similar allegations were made by another inmate and in response he contacted the Arkansas Department of Health (ADH) and a facility inspection was done. *Defendant's Exhibit* A at ¶ 7. No evidence of mold was found. *Id.*

When Plaintiff made these allegations, the ADH was again contacted and the facility inspected. *Deft's Ex.* A at ¶ 8. The air quality assessment was performed on June 24, 2013. *Deft's Ex.* B. The assessment was performed by Matthew Hicks, the Northwest Region Indoor Air Quality Specialist. *Id.* He did not observe any mold growth in the facility although the shower area had high relative humidity levels. *Id.* He indicated the damp environment could cause dust mites, molds, and bacteria to proliferate. *Id.*

The Sheriff by affidavit states that he has "very little involvement in the day-to-day operation of the Crawford County Detention Center." *Deft's Ex.* A at ¶ 4. Instead, he leaves the day-to-day operations to his jail administrator and assistant jail administrator. *Id.* He does not review inmate grievances unless they are addressed specifically to him. *Id.* at ¶ 5.

With respect to Plaintiff's allegation he was exposed to cold temperatures by having to walk from the jail to the courthouse on December 10, 2012, the Sheriff first states that he had no involvement in that situation. *Deft's Ex.* A at ¶ 9. The Sheriff also states that they have coats available to inmates when they are escorted to the courthouse. *Id.* Finally, the Sheriff notes that the jail is right across the street from the courthouse so Plaintiff would have been exposed to the cold at the most for two or three minutes. *Id.* at ¶ 10. In response, Plaintiff argues that regardless of the length of time involved he was exposed to the cold. *Resp.* at ¶ 32. He also notes that at the ADC inmates do not go out when the temperature is below 48 degrees.

In response to a grievance dated April 26, 2013, Plaintiff was advised that what he believed was mold in the shower was just discoloration. *Deft's Ex.* C. On April 30th, Deputy Sean Willie prepared an incident report in which he stated he supplied the inmates with cleaning supplies and a long handled brush so that they could reach the wall and ceiling above the shower. *Deft's Ex.* D. Plaintiff, using vulgarities, refused to clean the shower area. *Id.* In response, Plaintiff was told it was the inmates' responsibility to clean the cell block. *Id.*

However, Plaintiff states that he did clean his own area where he slept. *Resp.* at ¶¶ 15-16. Plaintiff asks why he would clean something that he was getting sick from. *Resp.* at ¶¶ 11 & 15-16. He also wonders why if it isn't black mold the Defendant would worry about the area being cleaned. *Id.* at ¶ 12.

On April 30th, Plaintiff also submitted a grievance about being housed with an inmate who had TB. *Deft's Ex.* E; *Resp.* at ¶ 25. In response, he was told that the inmate he was referring to did not have TB. *Deft's Ex.* E. He was told TB infection and TB disease were two separate things. *Id.* If the inmate was contagious, Plaintiff was told he would be isolated. *Id.*

In his summary judgment response, Plaintiff states he was incarcerated with the inmate in question at the Technical Violators Program (TVP) and the inmate was being treated for TB. *Resp.* at ¶ 26. Plaintiff also indicated that after his TB test at the CCDC the knot took longer to leave than it did when he was tested for TB at the TVP. *Id.* at ¶ 28. In response, he was told the mark should go away and the inmate did not have TB but had tested positive for being exposed to it. *Id.* at ¶ 29; (Doc. 31). Plaintiff has not been diagnosed as having TB. *Resp.* at ¶ 30.

Plaintiff maintains that he was denied trustee status because of his race and/or because he submitted grievances and filed civil complaints. *Resp.* at ¶ 21. However, Plaintiff states that "two black guys" in another pod were made trustees. *Id.* at ¶ 22. He also indicates that black trustees were also selected from his pod. *Id.* at ¶ 23.

On May 30th, Plaintiff was seen by the doctor because of complaints of headaches. *Resp.* at ¶ 42. The doctor informed Plaintiff that he would not prescribe any more medication. *Id.* at ¶ 43. However, Plaintiff was given Ibuprofen for headaches on May 6th, May 10th, May 20th, May 23rd, and June 12th. *Id.* at ¶ 45. Plaintiff submitted a grievance on June 20th in which he stated he had been complaining for two weeks about headaches and still had not received any medical attention. *Resp.* at ¶ 41.

On June 15th, Plaintiff submitted a grievance complaining that his family was turned away. *Resp.* at ¶ 34. Plaintiff believes this was done in punishment because his cell lights still had some paper on them. *Id.* at ¶ 36. Plaintiff maintains it was someone in his cell before him that put paper on the lights. *Id.* at ¶ 37. His family was allowed to visit him both before and after June 15th. *Id.* at ¶ 40.

AO72A
(Rev. 8/82)

## 2. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## 3. Discussion

Defendant maintains that the facts taken in the light most favorable to the Plaintiff do not rise to the level of any constitutional violations. First, Defendant argues he is entitled to judgment on the official capacity claims because the complaint is completely devoid of any alleged custom or policy of Crawford County which resulted in a violation of his constitutional rights. Second, Defendant argues that he had no personal involvement in the alleged constitutional violations; moreover, Defendant asserts he cannot be held liable for the misconduct

-5-

of a subordinate official under the theory of *respondeat superior*. Third, Defendant asserts the conditions of confinement claims are subject to dismissal because Plaintiff cannot show he was subjected to conditions that posed a substantial risk of serious harm to his health or safety. Finally, Defendant asserts that no claims of constitutional dimension have been asserted.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

### (A). Conditions of Confinement

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). *See also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities.

To state an Eighth Amendment claim the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of

serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise." *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*quoting, Wilson v. Sieter*, 501 U.S. 294 (1991)).

This standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted). *See also Hudson v. McMillian*, 503 U.S. 1 (1992)(The objective component is "contextual and responsive to contemporary standards of decency.")(quotation omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. (citations omitted). *See also Brown v. Nix*, 33 F.3d 951, 954-55 (8th Cir. 1994).

Clearly, the conditions Plaintiff complains about do not amount to constitutional violations.[1] With respect to the alleged presence of black mold, an outside agency, the ADH, inspected and found no mold present. With respect to the cold temperatures, Plaintiff does not dispute that at most he was in the cold for three to four minutes. His claim for "public humiliation" is based on the fact that the inmates walked across the street to court. This does not state a claim. His complaint that he was exposed to TB, also fails. Plaintiff was tested for TB at the CCDC, the nurse stated that the inmate was not contagious, and Plaintiff indicates he was housed with the same inmate at another facility without suffering any ill effects due to the TB.

---

1. Plaintiff has submitted a newspaper article (Doc. 67) with respect to his conditions of confinement claims. "[O]nly evidence that would be admissible at trial may be relied upon to counter a motion for summary judgment." *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.,* 495 F.3d 605, 611 n. 4 (8th Cir. 2007). "Newspaper articles are rank hearsay" and may not be used to prove the truth of the matter asserted. *Nooner v. Norris,* 594 F.3d 592, 603 (8th Cir. 2010).

"[E]xtreme deprivations are required to make out a conditions-of-confinement claims. [O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9; *Myers v. Hundley* 101 F.3d 542, 544 (8th Cir. 1996); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Plaintiff's claims are clearly insufficient.

### (B). Discrimination

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)(citation omitted). Only *deliberate* discrimination is actionable under the Equal Protection Clause. *Personnel Administrator v. Feeney*, 442 U.S. 256 (1979); *Washington v. Davis*, 426 U.S. 229, 239-48 (1976). Thus, a claim of racial discrimination under the Equal Protection Clause requires a showing of discriminatory intent. *Washington*, 426 U.S. at 239-40.

Here, there is no genuine issue of fact as to whether the Sheriff intentionally discriminated against Plaintiff because he is Black. First, there is no indication that the Sheriff was personally involved in selecting trustees. Second, Plaintiff admits that Black inmates were selected as trustees in at least two pods including his own. *Resp.* at ¶¶ 22-23. In short, there is nothing from which an inference of discrimination can be drawn.

### (C). Retaliation

In *L.L. Nelson Entrs., Inc. v. City of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012) the court stated that:

> [t]o establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that [he] engaged in a protected activity, (2) that the defendants responded with adverse action that would chill a person of ordinary firmness from continuing the activity, and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.

*Id*. (internal quotation marks and citations omitted). "In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in protected speech." *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004). The filing of grievances and the filing of lawsuits are protected First Amendment activity. *Haynes v. Stephenson,* 588 F.3d 1152, 1155-56 (8th Cir. 2009).

With respect to the first prong, it is undisputed that Plaintiff submitted a number of grievances and has also filed civil rights cases. Clearly, Plaintiff engaged in protected activity.

With respect to the second prong, Plaintiff maintains the adverse action was the denial of trustee status. Plaintiff in fact was not made a trustee.

With respect to the third prong, that the adverse action was causally related to the protected expression, I do not believe there is a question of fact as to whether the denial of trustee status was causally related to Plaintiff's exercise of the right of free speech. The Sheriff was not personally involved in the alleged retaliatory conduct nor is there any indication that he even knew Plaintiff had requested trustee status. *See Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985(to be liable, defendant in § 1983 action must be personally involved in or directly responsible for the conduct that caused the injury).

AO72A
(Rev. 8/82)

**(D).  Visitation**

Prisoners retain their constitutional rights to the extent those rights do not conflict with their status as prisoners and the legitimate demands of the prison system.  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Among the rights guaranteed by the Constitution is the First Amendment's guarantee of the right to freedom of association.

In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 461 (1989), the Supreme Court held that prisoners do not possess a substantive liberty interest arising under the Constitution in unfettered visitation.  More recently in *Overton v. Bazzetta*, 539 U.S. 126 (2003), the Supreme Court noted that "freedom of association is among the rights least compatible with incarceration."  *Id.* at 131.  It held that "[s]ome curtailment of that freedom must be expected in the prison context."  *Id.*  The Court, however, cautioned that it was not holding or implying that "any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners."  *Id.*

At issue in *Bazzetta* were regulations of the Michigan Department of Corrections that placed certain limitations on visits from family members, that prohibited inmates from visiting with former inmates, and that subjected inmates with two substance-abuse violations to a ban of at least two years on future visitation.  The Court held these limitations were rationally related to legitimate penological objectives and did not violate substantive due process, or the free association guarantee of the First Amendment.  The Court further held that the two year ban on visitation for inmates with two substance-abuse violations did not violate the constitutional prohibition against cruel and unusual punishment.

-10-

Here, Plaintiff was denied visitation on a single day. His family was able to visit him both before and after June 15th. No claim of constitutional dimension is stated. *See Ware v. Morrison*, 276 F.3d 385, 387-388 (8th Cir. 2002)(Inmate "had no constitutionally protected interest implicated by the suspension of his visitation privileges."); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (prison officials can reasonably limit prisoner's right to communicate with people outside prison when necessary to maintain security); *Smith v. McDonald,* 869 F. Supp. 918 (D. Kan. 1994) (finding no violation of prisoner's rights by denying visitation for five months with six-year-old son during seven month period of incarceration).

### (E). Medical Attention

To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

Plaintiff's claim in this case centers on the jail doctor's alleged denial of medical care for headaches. There is absolutely no evidence that the Sheriff was personally involved in responding to any of Plaintiff's medical requests; nor is there any indication he was consulted about the requests or even knew about the requests. *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in

making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). The Sheriff's general responsibility for supervising the jail is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). In short, there is simply no basis on which the Sheriff could be held liable.

### (F). Official Capacity Claims

Finally, with respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Crawford County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

To establish Crawford County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir.2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir.2007).

Id. at 817-18. Plaintiff was asked whether he contended that a custom, policy, or practice of Crawford County resulted in his being deprived of his federal constitutional rights, he responded: "Yes, "cause of the nast[i]ness of the jail." "Plaintiff safety and life being at risk," and "walked in cold weather as some slaves to court." *Resp.* at ¶ 48.

These allegations do not suggest the existence of any policy, custom, or practice of the County. Furthermore, the Sheriff has been found not to be individually liable on Plaintiff's claims. Therefore, Plaintiff's official capacity claims against Crawford County fail. *See e.g., Burton v. St. Louis Bd. of Police Com'rs*, 731 F.3d 784, 799 (8th Cir. 2013).

### 4. Conclusion

For the reasons stated, I recommend that the Defendant's motion for summary judgment (Doc. 45) be granted and this case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE